UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN R. CENCELEWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:18-CV-189-MGG |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff seeks judicial review of the Social Security Commissioner's decision dated July 5, 2017, denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act respectively. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**I.    OVERVIEW OF THE CASE**

Plaintiff is a veteran who completed one year of college and was 39 years old on the alleged disability onset date of May 9, 2012. Plaintiff suffers from post-traumatic stress disorder ("PTSD"), memory loss, repressed immune system, sleep apnea, gastrointestinal problems, back pain, joint soreness, and high cholesterol. Plaintiff previously worked as a plater, production manager, and sales representative technician.

After considering the record developed as part of Plaintiff's instant DIB and SSI applications dated August 22, 2012, an administrative law judge ("ALJ") issued a decision on July 5, 2014, finding him not to be disabled as defined by the Social Security Act ("Act"). On judicial review, this Court remanded Plaintiff's case to the SSA for further proceedings finding error in the July 2014 ALJ decision. *See Cencelewski v. Berryhill*, CAUSE NO. 3:15-CV-00580, 2017 WL 1141097 (N.D. Ind. Mar. 28, 2017).

Upon remand, the SSA's Appeals Council assigned Plaintiff's case to a new ALJ who held a new hearing on April 28, 2017. Plaintiff testified at the hearing along with Michael C. Rabin, Ph.D., an impartial psychological expert, Gilberto Munoz M.D., an impartial medical expert, and a vocational expert. On July 5, 2017, the ALJ issued his decision and again found Plaintiff not disabled. On January 17, 2018, the Appeals Council denied Plaintiff's request for review making the ALJ's July 2017 decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Now ripe before this Court is Plaintiff's complaint for judicial review of the Commissioner's July 2017 decision under 42 U.S.C. § 405(g).

## II. DISABILITY STANDARD

In order to qualify for DIB and SSI, a claimant must be "disabled" under Sections 216(i), 223(d), and 1615(a)(3)(A) of the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. §§ 404.1520; 416.920[1]; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's

---

[1] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this order will only refer to 20 C.F.R. § 404 for efficiency.

findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th. Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

4

## IV. ANALYSIS

### A. Issues for Review

Plaintiff challenges the ALJ's RFC determination alleging errors of law and lack of the necessary logical bridge from the evidence to the mental RFC. A claimant's RFC is the most activity in which he can engage in a work setting despite the physical and mental limitations that arise from his impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). According to the ALJ, Plaintiff retains the RFC to perform light work with some postural, environmental, and mental limitations. [DE 9 at 1607–08].

Plaintiff specifically alleges that the ALJ improperly weighed some of the medical opinion evidence in the record, particularly the opinions of a State Agency psychological consultant, two consultative psychological examiners, and the testifying psychological expert. Plaintiff also argues that the ALJ erred in his analysis of Plaintiff's social functioning deficits, his limitations arising from fatigue and concentration issues, and his subjective symptoms. Lastly, Plaintiff contends that the ALJ erred by failing to consider three third-party function reports. Despite the Commissioner's assertion to the contrary, Plaintiff thus argues that the ALJ's alleged errors resulted in a mental RFC assessment that is unsupported by substantial evidence.

### B. Medical Opinion Evidence

#### 1. State Agency Psychologist Opinion

Plaintiff argues that "[t]he ALJ has not offered good reasons for rejecting the State Agency Psychological Opinion." [DE 19 at 5]. Plaintiff's argument lacks clarity as to which opinion is at issue.

5

The Administrative Record before the Court on Plaintiff's instant appeal includes multiple State Agency psychologist opinions discussing Plaintiff's mental limitations from his alleged onset date of May 9, 2012, through July 5, 2017, when the ALJ issued the decision now at issue. However, Plaintiff's opening brief discusses only the January 2016 opinion of Donna Unversaw, Ph.D., prepared at the initial level of consideration for Plaintiff's subsequent Title II DIB application dated November 6, 2015, and the May 2016 Mental RFC Assessment by Ken Lovko, Ph.D., prepared at the reconsideration level of Plaintiff's Title XVI SSI application dated November 13, 2015.[2] Plaintiff does not develop any argument as to Dr. Unversaw's opinion, but challenges the ALJ's conclusion regarding Dr. Lovko's opinion. In support, Plaintiff quotes two sentences from Dr. Lovko's opinion that he contends show the ALJ's alleged error then cites explicitly to page 1748 of the Administrative Record before this Court, where those two allegedly key sentences are located. [*See* DE 19 at 6 (citing to "R. 1748")].

In his response brief, the Commissioner attempts to rebut Plaintiff's argument in part by quoting Dr. Unversaw's January 2016 conclusion that Plaintiff had not established any medically determinable impairments through his date last insured. However, the Commissioner never mentions Dr. Lovko's May 2016 opinion. Instead, the Commissioner develops an argument based upon a January 2013 Mental RFC Assessment by Dr. Lovko, prepared at the initial level of consideration for Plaintiff's instant SSI application dated August

---

[2] The parties have not demonstrated explicitly that these State Agency opinions, prepared as part of the evaluation of Plaintiff's subsequent DIB and SSI applications in November 2015 should be considered in conjunction with Plaintiff's instant August 2012 DIB and SSI applications. At the same time, neither party raises concerns about the propriety of its consideration here. Therefore, the Court will consider the opinions prepared in relation to Plaintiff's November 2015 applications as part of the instant appeal.

6

22, 2012. The Commissioner reports Dr. Lovko's paragraph "B" criteria findings at that time citing pages 76–79 of the Administrative Record where the January 2013 opinion is located.

In his reply brief, Plaintiff does not appear to recognize the Commissioner's misinterpretation of his original argument. Instead, he reiterates his argument as to Dr. Lovko's May 2016 opinion without any mention of the January 2013 opinion or any further mention of Dr. Unversaw's January 2016 opinion. Accordingly, the Court infers that Plaintiff is only challenging the ALJ's consideration of Dr. Lovko's May 2016 opinion.

Arguably, the Commissioner has waived any argument related to Dr. Lovko's May 2016 opinion by failing to address it. However, such waiver does not mean that remand is necessary in this case. Even assuming that Plaintiff is correct and the ALJ failed to establish a logical bridge from the opinion evidence to his RFC determination, such an error is subject to harmless-error review. *Cf. Schomas*, 732 F.3d at 707. Social Security appeals need not be remanded to an ALJ for further explanation if the Court "can predict with great confidence that the result on remand would be the same." *Id.* (collecting cases). Here, Plaintiff has not shown that the ALJ's assumed error would result in any change to the ALJ's RFC or disability determination.

In his May 2016 Mental RFC Assessment concerning Plaintiff, Dr. Lovko opined *inter alia* that Plaintiff (1) "would appear to work best alone, in semi-isolation from others or as part of a small group" (hereinafter "isolated work limitation"), (2) "could work with a supervisor who was normally considerate and positive, but would have problems with a supervisor who was often negative, critical, or quarrelsome" (hereinafter "positive supervisor limitation"). [DE 9 at 1756]. In a five-sentence discussion of Dr. Lovko's opinion, the ALJ starts by noting that he

7

considered the opinion "with respect to the mental 'B' criteria" and then affords little weight to the assessment finding that the "B" criteria changed in January 2017 and that "the evidence of record supports greater limitation with respect to the mental 'B' criteria" referencing his analysis regarding Step Three Listings. [DE 9 at 1616]. The ALJ then cites Dr. Lovko's findings that Plaintiff "can understand, remember, and carry-out unskilled tasks . . . . attend to task for sufficient periods of time to complete tasks . . . . and manage the stresses involved with unskilled work." [*Id.*]. He concludes by giving little weight to Dr. Lovko's opinion because the evidence of record and the opinion of psychological expert Dr. Rabin, disclosed through testimony at the April 2017 hearing, supports greater limitation. [*Id.*].

Plaintiff contends that the ALJ failed to build an accurate logical bridge between the evidence and his decision to grant greater deference to Dr. Rabin's opinion. Dr. Rabin testified that Plaintiff's psychological limitations would limit his work

> to simple, routine and repetitive tasks [that does not] require directing others, abstract thought or planning, . . . involve[s] only simple work-related decisions and no more than routine workplace changes [in] an environment [with only] superficial interaction with coworkers on an occasional basis [and] no interaction with the public and no more than occasional and brief supervision.

[DE 9 at 1670]. The ALJ incorporated Dr. Rabin's opinion almost verbatim into Plaintiff's mental RFC, which states that

> [t]he claimant is limited to simple, routine and repetitive tasks but he cannot perform work that would require directing others, abstract thought or planning, and would involve only simple, work related decisions, and routine workplace changes. The claimant is limited to brief and superficial interaction with supervisors on a no more than occasional basis, defined as the claimant being instructed on how to perform the job and as to the job expectations but is not directly supervised other than to make sure that his work is done at the end of the day. The claimant is to have no

8

> interaction with the public. He can interact with co-workers on an occasional basis but the depth of the interaction is on a superficial basis.

[DE 9 at 1608]. According to Plaintiff, however, Dr. Lovko's opinion supports greater restriction than Dr. Rabin's testimony and should therefore be given more weight.

Plaintiff is correct that the ALJ does not explicitly incorporate the isolated work and positive supervisor limitations in the RFC or his discussion of Dr. Lovko's opinion. Additionally, the ALJ does not explain clearly how the limitations opined by Dr. Rabin exceed the isolated work and positive supervisor limitations. As a result, it is arguably difficult to trace the ALJ's reasoning as to Dr. Lovko's opinion. However, remand cannot be predicted to result in any change.

In the RFC, the ALJ accounted for Dr. Lovko's isolated work limitation by restricting Plaintiff to brief and superficial interactions with supervisors and coworkers and no interaction with the public. The only remaining gap between Dr. Lovko's opinion and the RFC is the positive supervisor limitation. The Court does not challenge Plaintiff's reports that he has difficulty getting along with supervisors, especially those that are "negative, critical, or quarrelsome," as Dr. Lovko opines. The problem is that the personality traits of supervisors cannot be accounted for in determining whether jobs exist in the national economy for an individual. The vocational expert confirmed this reality when questioned by Plaintiff's attorney at the hearing. [*See* DE 9 at 1692]. Moreover, employees generally can be expected to "have problems with a supervisor who [is] often negative, critical, or quarrelsome" as Dr. Lovko attributes specifically to Plaintiff. Therefore, adding the proposed "positive supervisor limitation" to Plaintiff's

9

RFC would not affect the Step Five analysis relating to available jobs. Accordingly, any error in explaining fully the weight given to Dr. Lovko's opinion is harmless.

### 2. Psychological Consultative Examiners

Plaintiff similarly challenges the ALJ's failure to explain what weight he afforded to two psychological consultative examiners. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). Yet "an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Nevertheless, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this **unusual** step." *Id.*

In a Medical Source Statement ("MSS") dated January 1, 2013[3], Dr. Kent A. Hershberger, Ph.D., HSPP opined that Plaintiff's "stress tolerance is estimated to be well below average at this time [and he] may need accommodations in a work environment due to his reported chronic pain." [DE 9 at 317]. In a separate MSS dated May 2, 2016, Dr. Alan Wax, Ph.D., HSPP diagnosed Plaintiff with severe major depression among other things. [*Id.* at 2716]. The ALJ does not reference Dr. Hershberger's MSS in his decision at all. As to Dr. Wax's MSS, the ALJ devotes a

---

[3] The parties disagree as to whether Dr. Hershberger's opinion was based on an examination and evidence that predated the relevant period. The Court need not resolve this dispute because Plaintiff's argument fails even if Dr. Hershberger's opinion were to be considered.

10

substantial paragraph to it describing in detail his observations of Plaintiff during the examination. However, the ALJ never mentioned Dr. Wax's severe depression diagnosis explicitly and never assigns any amount of weight to his MSS.

Plaintiff acknowledges that the ALJ need not address every piece of evidence in the record, but contends that this amounts to "ignor[ing] an entire line of evidence that is contrary to the [ALJ's] ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted). Yet Plaintiff fails to explain how Dr. Hershberger's stress and pain accommodation opinions as well as Dr. Wax's diagnosis, unaccompanied by any opinion regarding work-related limitations, run contrary to the ALJ's RFC finding. Therefore, any error in failing to designate specific weight to the consultative examiners' MSS reports is harmless.

## C. Social Functioning Deficits

Plaintiff further challenges the ALJ's evaluation of his social functioning deficits. Plaintiff argues that an unresolved conflict exists in the ALJ's decision between the social limitations incorporated into Plaintiff's mental RFC and the ALJ's finding in the Step Three analysis that Plaintiff has marked limitation in interacting with others. Citing evidence of Plaintiff's temper issues reflected in anecdotes about his interactions with assorted people, his compensation for social difficulties in his activities, a consultative examiner's notes, and Dr. Lovko's opinion that he works best alone, Plaintiff contends that the record supports the ALJ's finding of marked social limitations, but confronts his failure to explain how this can be consistent with Dr. Rabin's opinion based on a finding of only moderate social limitations.

Plaintiff's argument here is misplaced. First, the ALJ's marked limitation finding was part of the Step Three Listing analysis of paragraph B criteria, which does not dictate a claimant's RFC. [*See* DE 9 at 1607]. Second, the ALJ spent considerable time discussing Plaintiff's social limitations in his decision. He acknowledges Plaintiff's social issues, references Plaintiff's good and bad experiences interacting with others, recognizes Plaintiff's coping strategies that allow him to overcome his social issues and related symptoms, discusses medical opinions about Plaintiff's ability to work and related limitations, and notes Plaintiff's own reports that his symptoms have improved since he completed substance abuse treatment. In his Step Three analysis, the ALJ also used almost a full page to explain Dr. Rabin's opinion and compare it to other evidence to support his conclusion that Plaintiff's "psychologically based symptoms affecting his social interaction with others" justify finding him "markedly limited in this area of functioning." [DE 9 at 1605–06].

While the ALJ may not have combined the evidence of concern to Plaintiff into a concise rationale in a singular location in his decision, he clearly supported his conclusions about Plaintiff's social deficits with substantial evidence.

### D. Fatigue and Concentration

Plaintiff then argues that the ALJ improperly failed to account for disabling fatigue and concentration problems arising from Plaintiff's sleep apnea and PTSD-related nightmares in combination. However, the ALJ does explicitly note that Plaintiff's nightmares cause him to rip off his CPAP mask implying that Plaintiff has difficulty following the effective treatment regimen for his sleep apnea. [DE 9 at 1618].

12

The ALJ also cites to Plaintiff's VA records indicating that "sleep apnea would not impact his ability to do his work." [*Id.*]. Thus, the ALJ has considered evidence of the effects of Plaintiff's combined sleep apnea and nightmares.

Additionally, the ALJ explicitly incorporated restrictions into Plaintiff's RFC to account for fatigue and drowsiness arising from his headaches, sleep apnea, pain, and medications. Specifically, the ALJ limited Plaintiff's work to no exposure to dangerous moving mechanical parts or unprotected heights and no driving as a junction of the job. The ALJ even acknowledges that the driving restriction accommodates Plaintiff's "psychological impairments with reports of some road rage." [DE 9 at 1613].

Plaintiff is not satisfied with the ALJ's consideration of his fatigue and concentration problems and seems to invite the Court to reweigh the same evidence reviewed by the ALJ to find reversible error. First, the Court cannot accept such an invitation. *See Boiles*, 395 F.3d at 425. Second, the ALJ has supported his conclusions about the effects of Plaintiff's fatigue and concentration problems with substantial evidence. There may be other related evidence in the record not discussed in the ALJ's decision but the ALJ did not ignore Plaintiff's sleep apnea and nightmares or the fatigue or concentration problems resulting from those impairments in combination. Therefore, remand is not warranted on this issue.

### E. Subjective Symptoms

Plaintiff contends that the ALJ erred in finding Plaintiff's alleged subjective symptoms inconsistent with the record. Specifically, Plaintiff argues that the ALJ overemphasized his participation in trips and events with family and friends without

13

considering how he performed those activities, the struggles he experienced in performing those activities, and the way he modified his behavior to accommodate those struggles. Indeed, "a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy*, 705 F.3d at 639. Of course, the opposite is also true—ability to engage in daily activities by overcoming significant limitations does not necessarily translate into an inability to work full-time.

And here, the ALJ did consider Plaintiff's struggles. [DE 9 at 1606–07, 1609–10, 1616 (Wisconsin anxiety attacks; Mammoth Cave panic attack; Canada panic attacks); 1612 (shopping alone at night)]. Moreover, the ALJ thoroughly discussed the medical and psychological evidence in evaluating Plaintiff's subjective symptoms. Therefore, the ALJ's opinion is supported by substantial evidence.

### F. Third Party Statements

Plaintiff argues that the ALJ improperly ignored the third-party reports of Plaintiff's girlfriend, brother, and step-father. In an undated two-page letter, Plaintiff's girlfriend reported that she dated Plaintiff from 2003 through 2007 during which time he suffered from a terrible memory, had sleep problems, and had only one childhood friend with whom he rarely initiated plans. [DE 9 at 2158–59]. In a letter dated May 30, 2011, Plaintiff's brother reported that Plaintiff could not sleep, suffered memory problems, and had a short temper that was constantly triggered. [*Id.* at 2161]. In another undated letter, Plaintiff's step-father described Plaintiff as having returned from war

14

with a bad temper, that he would engage in fights, as angry, and in conflict with people leading him to lose his job. [*Id.* at 2979–84].

The Commissioner acknowledges that under 20 C.F.R. § 404.1502(e)(4), the ALJ should have explained the weight given to third third-party function reports. However, this error is also harmless. First, Plaintiff's girlfriend's letter only discusses her observations of Plaintiff from 2003–2007, more than five years before Plaintiff's alleged onset date of May 9, 2012. Second, Plaintiff's brother's 2011 letter also predates the alleged onset date and Plaintiff's successful substance abuse treatment. Third, Plaintiff's step-father's letter does not describe Plaintiff's functional limitations. Therefore, none of these reports could change the outcome of Plaintiff's disability determination.

Plaintiff's argument that the ALJ improperly discounted Plaintiff's mother's third-party function report also fails for reasons discussed above with regarding to Plaintiff's social functioning deficits.

V. **CONCLUSION**

For the reasons stated above, the ALJ's determination is supported by substantial evidence and does not warrant remand. Accordingly, the Commissioner's decision is **AFFIRMED**. The Clerk is instructed to enter judgment in favor of the Commissioner.

**SO ORDERED** this 26th day of September 2019.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge